MISSOURI–KANSAS–TEXAS–RAIL-
ROAD COMPANY, a corpora-
tion, Appellant,

v.

Robert W. WARDLOW, Appellee.

No. 5942.

United States Court of Appeals
Tenth Circuit.

Jan. 6, 1959.

Rehearing Denied Jan. 30, 1959.

Harry D. Moreland, Tulsa, Okl. (W. A.
Thie, Denison, Tex., and E. J. Doerner,
Tulsa, Okl., were with him on the brief)
for appellant.

Bryan W. Tabor, Tulsa, Okl. (Imogene
H. Harris, Ungerman Grabel, Ungerman,
Leiter & Unruh; Rucker, Tabor & Cox;
Joseph A. Sharp, and Joseph M. Best,
Tulsa, Okl., were with him on the brief)
for appellee.

Before BRATTON, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

This is an appeal from a judgment entered on a jury verdict, in favor of the plaintiff, in a railroad crossing accident case. The railroad company concedes its negligence and presents the single question of whether the plaintiff was guilty of contributory negligence as a matter of law.

The company maintained and operated a railroad running east and west through the business district and across heavily traveled Main Street in Sand Springs, Oklahoma. On February 4, 1957, at about 7:15 a. m., plaintiff was driving his automobile in a southerly direction on Main Street and was about to cross the defendant's railroad tracks. The weather was relatively dry, although a fog was lifting and there was some moisture from it. The view to the west of those approaching the crossing from the north was obstructed by a building located approximately 40 feet north of the tracks. There were no warning signals of any kind maintained at the crossing except a "cross-buck" sign on the east side of the street and south of the tracks. The tracks were used only for freight service, and usually freight trains stopped before crossing Main Street. It had been several years since passenger trains had been operated over these tracks, but on the date in question, the company detoured its passenger train "Blue Bonnet" through Sand Springs. The engineer on the "Blue Bonnet" had not made a run over this line for ten years. This rerouting was described as "an unusual occurrence". The passenger train went through Sand Springs at an admitted speed of 48 miles per hour, and there was also testimony that the speed was from 60 to 70 miles per hour. An ordinance limited the speed of trains within the city limits to 15 miles per hour.

Plaintiff approached the crossing from the north at about 20 miles per hour. He did not expect a train of any kind, and he knew that in recent years there had been no passenger service over these tracks. At a distance of 55 to 60 feet north of the tracks, plaintiff looked to the right and did not see or hear the oncoming train. At this point the tracks to the west could be seen for about 125 feet. He then looked to the east, and when he turned his attention back to the street, "the train came roaring through", and he was unable to prevent the collision. The automobile collided with the train between the first and second units of the diesel engine, resulting in serious injury to the plaintiff. The train crew did not see the approaching automobile and was unaware of the accident until informed later. Plaintiff testified that he did not hear the train whistle or its bell ring. A motorist approaching the crossing from the south did not recall hearing a whistle or a bell from the train.[1] The train crew, as well as other witnesses, testified that the train's whistle was blowing as the train approached the crossing.

■ The gist of the defendant's contention is that a person who is about to drive a motor vehicle across railroad tracks, must make vigilant use of his senses by looking and listening at a time and place which is effective to disclose the approach of a train in time for him to avoid a collision, and that the failure of this plaintiff to exercise those precautions, defeated his right to recover, regardless of the negligence in the operation of the train. As a general proposition, those are the obligations of persons about to cross railroad tracks. 44 Am. Jur., Railroads, § 546; Miller v. Union Pacific R. Co., 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285; Missouri Pac. R. Co. v. Merritt, 104 Okl. 77, 230 P. 513. This

1. This motorist, approaching the crossing from the south, saw the train when it was four or five hundred feet away. He was then about 130 feet from the tracks, traveling at about 25 miles per hour, and brought his car to a stop within six or seven feet of the tracks.

does not mean, however, that the sole responsibility is upon the motorist and that a railroad company is never liable in railroad crossing accident cases. Pokora v. Wabash Ry. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149.

■ It is the law of Oklahoma that the rights and duties of railroad companies and motorists using railroad crossings are mutual and reciprocal. Although trains have the right of way, the operators of both trains and motor vehicles have the right to use the crossings and are required to exercise reasonable and prudent care to avoid accidents. St. Louis-San Francisco Ry. Co. v. Green, Okl., 287 P.2d 700; Clements v. Atchison, T. & S. F. R. Co., 124 Okl. 13, 253 P. 496; Chicago, R. I. & P. R. Co. v. Baroni, 32 Okl. 540, 122 P. 926. Reasonable and prudent care is that which an ordinarily prudent person would exercise under like circumstances. Restatement, Torts, § 283. "Contributory negligence is * * that want of ordinary care, upon the part of the person injured by the negligence of another, which, combined and concurring with the negligence of the defendant, proximately contributes to the injury." St. Louis-San Francisco R. Co. v. Bryan, 113 Okl. 39, 237 P. 613; St. Louis-San Francisco R. Co. v. Eakins, 141 Okl. 256, 284 P. 866. The duties resting upon each party depend on the conditions and circumstances.[2] The care which each must exercise to avoid an accident is commensurate with the degree of danger existing at the crossing. Clements v. Atchison, T. & S. F. R. Co., supra; Thompson v. Cooper, 192 Okl. 237, 135 P.2d 49; St. Louis-San Francisco R. Co. v. Rundell, 108 Okl. 132, 235 P. 491.

■ The defendant was entitled to a directed verdict only if the evidence, with all inferences which reasonable persons could deduce therefrom, was insufficient to support the jury's conclusion that the plaintiff was not guilty of contributory negligence.[3] The fundamental test for negligence is the failure to exercise reasonable care under the particular circumstances. Smith v. Philadelphia Transp. Co., 3 Cir., 173 F.2d 721, certiorari denied 338 U.S. 819, 70 S.Ct. 63, 94 L.Ed. 497. It cannot be said that persons of reasonable minds would necessarily conclude that, under the existing circumstances, the plaintiff was negligent in not seeing the unexpected and speeding passenger train in time to stop before reaching the crossing. In recent years no trains had passed over these tracks at high speed. There was no indication and no warning that this comparatively safe crossing was suddenly to be transformed into a very dangerous one. A jury might well conclude that under these conditions, the plaintiff acted prudently.

Even if the evidence was sufficient to warrant an inference of negligence on the part of the plaintiff, the facts are such that a jury question is presented as to whether the proximate cause of the

2. This court, under somewhat similar facts, in Chicago & N. W. Ry. Co. v. Golay, 10 Cir., 155 F.2d 842, 847, said: "In a case of this kind, contributory negligence seldom depends upon a single fact or circumstance. Ordinarily, it depends upon many relevant facts and surrounding circumstances, and upon inferences fairly to be drawn from the testimony produced. Viewed in that light, we find no warrant for holding that reasonable minded persons would necessarily reach the conclusion that plaintiffs were at fault in failing to see the train in time for the automobile to be stopped before reaching the crossing, that Fred Golay was at fault in failing to stop the car, and that Ruth Golay was likewise at fault in fail-

ing to warn her husband of the approach of the train. In short, we think the question of contributory negligence was for the jury. Grand Trunk Railway Co. of Canada v. Ives, supra [144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485]."

3. In Chicago, Rock Island & Pac. R. Co. v. Hugh Breeding, Inc., 10 Cir., 232 F.2d 584, 589, we said: "It is only in those rare cases where but one conclusion can be drawn from the evidence that a court is warranted in deciding the question of negligence as a matter of law, and this in our view is not such a case." See also Kurn v. Adair, 198 Okl. 340, 178 P. 2d 104; Wisdom v. Bernhardt, 170 Okl. 385, 40 P.2d 679.

injury was the negligence of the defendant or whether it was caused or contributed to by the negligence of the plaintiff. Chicago, R. I. & P. R. Co. v. McDougal, Okl., 262 P.2d 884; Kurn v. Adair, 198 Okl. 340, 178 P.2d 104; Kurn v. Maxwell, 194 Okl. 336, 151 P.2d 386; Chicago, R. I. & P. R. Co. v. Richerson, 185 Okl. 560, 94 P.2d 934; Missouri, K. & T. R. Co. v. Perino, 118 Okl. 138, 247 P. 41, 47 A.L.R. 283.

We think the unusual operation of the "Blue Bonnet" across the main thoroughfare of this city, at a high and reckless rate of speed, in violation of the City Ordinance, with no warning other than the train's whistle, presented a jury question not only as to whether the plaintiff acted prudently under those circumstances, but also as to whether his conduct, if negligent, was a proximate cause of the injury.

Affirmed.